This brings us to our final case of the day, Appeal No. 22-1926, United States v. Paul Erlinger. Okay, we'll hear from Ms. Cook when you're ready. Thank you and good afternoon. Paul Erlinger is currently serving a 15-year sentence in the Bureau of Prisons. That's the mandatory minimum penalty for a felon in possession of a firearm whose sentence has been enhanced as a career offender, an armed career offender. The government concedes in this case that following the Supreme Court's decision in Wooden, the Sixth Amendment requires that a jury determine whether ACCA predicate offenses were committed on different occasions. Further, the government has recognized that ACCA's different occasions inquiry that is required by Wooden does not fall within Almendarez-Torres' narrow exception, the simple fact of a prior conviction. And the government concludes, as we urge, that a Sixth Amendment violation occurred in Mr. Erlinger's case. But having conceded that there was a Sixth Amendment violation, the government then argues that the error in this case was harmless. Because Mr. Erlinger raised the Sixth Amendment issue prior to sentencing, in fact, he raised it as early as 2018, the government's burden is proving that the error was not prejudicial. Unlike the defendant in the Rodriguez case, which was submitted by the government as supplemental authority here, Mr. Erlinger never waived any objections to the Sixth Amendment issue. As early as his original sentencing in 2018, prior to the Wooden case, he objected to the court's fact-finding of raising the Sixth Amendment issue. Ms. Cook, what would this jury trial look like? The government would have the burden of proving that the predicate offenses, which they allege, were committed on occasions separate from one another. I assume they're going to have some difficulty in this case. These are 30-year-old offenses, and they have very scant documentation that would prove when and where these events occurred. But a jury would be tasked with making a determination as to whether there were three separate occasions represented by the predicate offenses. So would Mr. Erlinger, for example—the government puts the records in that charge these different burglaries on different locations, different days. And Mr. Erlinger takes the stand and says, no, I did them all the same day? Or I'm trying to imagine what this looks like. Well, I think there are a number of different possibilities. One possibility is if it were true, he could testify that they occurred on the same day. Otherwise, he might rest on his right to remain silent and put the government to its burden of proof. I think one of the issues in this case which distinguishes it from many of the other ACCA enhancement issues is the fact that these convictions were Indiana state convictions. And in Indiana, the location of an offense and the date that is alleged in the information are not elements of the offense. Even though they are in the charging information, they're statements that we call non-elemental facts. Mathis refers to non-elemental facts in the records of prior convictions. And in fact, the Supreme Court in Mathis notes that those kinds of non-elemental facts, such as in Indiana, location and date, are prone to error. So then just going back to what the trial would look like, the defense would raise these kind of unreliability arguments that you raised in your brief, raise those for the jury. That is one possibility, yes. I'm sorry, go ahead. Let me ask you this. If the government concession is quite nice to have, I imagine for Mr. Erlinger, is it your position that the district court is bound somehow by that concession in the face of our Seventh Circuit precedent, like Elliott, that says it's okay for a judge to make this decision? And what's your position on whether or not Wooden affects that precedent? Because the concession is only part of the picture here. That's correct. And the district court believed that she was bound by the Seventh Circuit precedent, and believed that she was bound to make a finding of separate occasions based on the dates that were in the charging informations. That was not our position at the district court, and I believe the government's position at this point in time is now we look beyond that Sixth Amendment issue, which we concede is an error, was an error in the district court, to whether or not that error was a harmless error or not. And so you agree that harmless error is the standard. Your argument is just that there is harm. Yes. Did the defendant, Mr. Ellinger, ever dispute the dates or locations that are reported in the pre-sentence report? He disputed at each step of the proceedings the allegation that he had committed those predicate offenses, and in fact the government at one point alleged that there were four predicate offenses but couldn't find a judgment of conviction for one of them. He disputed at every point that those incidents had been committed on separate occasions. Did he dispute the facts and locations? I don't think it was incumbent on him. That's not my question. I understand that's your view, but if we might disagree with that, did he dispute the facts as alleged? He never testified that he committed the crimes on separate occasions or in separate locations. He never disputed that he did. Sorry. He never disputed the charge dates and locations, did he? He disputed them legally. He did not take a… Ms. Cook, look, I don't want to fence with you about this. All right. I understand your legal position, and I don't know what I think about it ultimately, but if I disagree with it, then the question is, is there actually anything to be tried here? I believe… And I haven't heard any indication that he has ever disputed any of those charge locations or dates. He never testified at… Or in any other form disputed them. That's correct. He admitted it. Thank you. The issue only comes up at resentencing, though, because the government keeps changing which predicates it's relying on throughout the proceedings. So these three burglars only become an issue at the final resentencing, and that's when Mr. Erlinger mounts this dispute. These aren't ACCA predicates in my book, am I right? Yes, Your Honor. Okay. So this is not some longstanding, long-running dispute about these three burglaries. This is a new issue. Well, he disputed the court's right to make a factual determination as a violation of the Sixth Amendment back in 2018 when there were two burglaries and another offense. With regard to these predicates, though, in the underlying case, when Mr. Erlinger pled to those charges, as part of his plea agreement, he admitted to all of the allegations made in the indictment, did he not? They were charging informations under Indiana law, and he pled guilty to those three charging informations. There was a document that was attached that he signed, which is boilerplate. I mean, he signed something also saying that he would testify against his co-defendants when he had no co-defendants. It was just boilerplate. He signed a document saying that he had been advised of the minimum and maximum penalties when those were left blank in that document. He said he had been advised by one attorney when another attorney signed off on that document. Yes, he said that he admitted the facts. There was no transcript of any colloquy with the court where he is specifically making any admission to location or date. And, again, I would just note that this is the Mathis problem. This is the same issue that Justice Gorsuch referenced in the Wooden Opinion. When he says there's this constitutional issue that's simmering under the surface of the Wooden case, it never was addressed in Wooden because Mr. Wooden didn't raise the constitutional issue. But Judge Gorsuch recognizes that, you know, if a jury has to find these facts, how can a judge impose punishment without equal certainty about the law's application to those facts? I think I'm out of time. All right. Mr. Reitz, and you can correct me on the pronunciation. You're correct, Your Honor. May it please the Court, Brian Reitz for the United States. Any error here was harmless because Mr. Erlinger's burglars were committed at different locations on different dates. I think using a hypothetical trial is maybe a good way to look at this and why that's harmless. So at a hypothetical trial, we would admit the charging informations in Mr. Erlinger's guilty plea where he signed that he agreed to the facts as alleged in the charges. But why ought, if Mr. Erlinger is saying there are lots of things I can tell a jury about the unreliability of those documents, government thinks those Indian documents are reliable, I don't, there are things I want the jury to know, why should he not have the opportunity to tell a jury that? So I don't want to argue with our concession that a jury is required, but at least to a fact finder, Mr. Erlinger had that opportunity when he went in front of the district court, and he has not disputed that the locations or the dates were incorrect. He has not cast any doubt why these particular documents were unreliable. So when the court here is looking whether the error was harmless, we have a play of what would have happened, and Mr. Erlinger said nothing. I think the blue brief is full of Mr. Erlinger saying why these documents are unreliable. And that he, you know, it appended to these or also in the file are a bunch of documents I signed with information that doesn't match up and, you know, these time and place are non-elemental and there are reasons you might not challenge them. So I don't know that your idea that a proxy of what happened before the district judge is good enough for what might happen in front of the jury when he did plenty in front of the district judge. I disagree that he did plenty, Your Honor. I think he made general objections about this, but he never disputed that the locations and dates were inaccurate, and he had the opportunity in front of the judge. The judge could have found something different if there had been some reason that Mr. Erlinger gave that was credible why the dates and locations and the charging information and his guilty plea were incorrect, but he never did. So we're in this hypothetical world that maybe Mr. Erlinger would be able to find some evidence or introduce something that would undermine it, but what we have in the record, a rational jury, which that is the test, a rational jury is going to rely on the certified court documents in the face of, I guess, attorney arguments at closing. That's basically what happened at sentencing. We had actual evidence from the government and attorney arguments from the defendant, and there's no reason to suspect at a trial anything different would happen, and nor has anything been alleged here. Mr. Rich, I want to ask you the question that Judge Hamilton, one of the questions that Judge Hamilton asked Ms. Cook, which is what would a trial like this look like where, let's say, the predicate crimes were not pleas but they were jury convictions, okay? And a jury is told, at least in this district, that when an indictment says on or about, it might not happen. It doesn't have to be on that exact date. It could be on or sometime about, right? And so the government would presumably enter the indictment. It would enter the verdict, but it would have to enter more, right? And perhaps, let's say in this situation, let's say there's three predicate crimes, and so then would the government basically retry the three prior cases? No, I don't think it would be that complicated, but I think you could have situations where we call an officer, the person that arrested him, maybe, in this case, perhaps a patrol officer that says, I patrolled Jasper, and I can tell you that these locations are five miles apart, four miles apart, three miles apart. So I think there's a number of things we could do. Now, in this case, frankly, I think it would be difficult. It is old, so it likely would look like just the charting documents. I don't want to say anything that we would have more evidence than what we have, but I think a lot of trials, we would have more evidence than just the charging documents. Sometimes the charging documents would be sufficient. Sometimes they maybe wouldn't be. Here you get close to that if all four burglaries were on April 4th. I think that would be really hard without more information. That's why the district court only considered that as one burglary. But in that situation, we might need to call someone else to explain what happened. There would be many witnesses. There could be the victims, the officers. It's like any trial. I think it would be open field for anything that was admissible under the federal rules of evidence. There are no further questions. We're happy to open up. I was trying to imagine welcoming prospective jurors and imagining how I would instruct them as a district judge on this question. I think it would have to start with having bifurcated trials, which would make it a little bit easier. Well, the government is obviously interested in this because it's adopting a new position all across the country that this is a jury question. Not only that, it seems like also kind of a backdoor's way of getting in prior convictions, right? Older convictions. Because if you do ask for an ACCA without that enhancement request in the indictment, then prior crimes would be governed by Rule 609, prior bad acts. But if you say that if you start bringing in predicates, then all of a sudden those convictions become centrally relevant to the prosecution and any arguments by the defense with regard to prejudice would basically more or less go out the window. And so that does raise rather difficult issues when it comes to how a court should treat prior convictions. I think most of that can be resolved by bifurcated trials, Your Honor. Bifurcated trial? Yeah. You have a trial and say, Mr. Erlinger, we go to trial, we convict him of the 922G offense. The jury comes back, and then we try him on the ACCA predicates. Of course, there's some prejudice always with introducing prior convictions, but the prior convictions at that point are the only relevant thing the jury is supposed to be looking at. So I think the prejudice is a lot lower. It's certainly not unfair at that point in time. And maybe there are cases you can redact the type of crime, but I think that is questionable. Now, all this may be a reason that we would encourage the court just to decide on harmless error. This is an issue that's percolating. The Eighth Circuit just granted en banc, and so they're maybe going to decide something, I think, here. Considering the documentation the government admitted, harmless error is the easiest way to resolve this case. This new guidance from the government, this new position, it was post-Wooden? Yes. Yes, it was a reaction to Wooden. It was actually, in fact, post-Mr. Erlinger's sentencing hearing. And post, as of Friday, I haven't checked since Friday, but as of Friday, post every circuit court opinion on this subject. Okay. But maybe something happened yesterday. I should have looked last night, but I did not. Okay. Thank you. You've got to stay alert. Okay. Thank you. Thank you, Your Honor. Okay. Ms. Cook, yes, you can have your full rebuttal time of two minutes. Thank you. So one of my concerns here is that it sounds like the panel is equating occurrence with date. The government is arguing that they're going to be able to prove these specific dates, but that's not what Wooden is talking about. Wooden is talking about an occurrence as opposed to a date. And, in fact, when the government's argument is all about the allegation that Mr. Erlinger's burglaries were temporally and locationally distinct, those are the questions for a jury and not for a judge in order to comply with the Sixth Amendment. But in Wooden, they talk about the fact that, historically, offenses have been treated as occurring on separate occasions if a person committed them a day or more apart or at a, quote, significant distance. But Wooden also recognized and said, of course, there will be some hard cases in between, as under almost any legal test. And Gorsuch, in his opinion, went on to say that offenses that are separated by substantial gaps in time or significant intervening events usually occur on separate occasions. But what accounts as a substantial gap or a significant event remains unexplained. So that's a jury question. It's not just the question, did Mr. Erlinger commit these burglaries on three separate dates, but were they three separate occasions? And a jury could find that there was some continuous activity that connected these. A jury would have to be instructed that they have to parse out these hard cases in between and look at whether the gaps in time are substantial or the intervening events are significant. Can I ask you about Kirkland, our Kirkland case? This was 2012. And the district court looked at information, the state court information, judgments, plea questionnaires, when it was trying to decide if the defendant committed the felonies on separate occasions. And it was tough in that case because the burglary and the robbery, two of the three predicates, were committed on the same day. So the judge was trying to figure out separate occasions or not. And we found the record was insufficient in that case. Yes. OK. Here, the district court relied on similar documents, information, judgment, plea. But unlike Kirkland, the informations clearly state different days, April 4, 8, 11. So how does our decision in Kirkland affect the analysis in your view? Well, I think what happened in this case was the judge considered both of the government's arguments. She considered the location argument and rejected it and found that the location argument was not proven by the government and no documents were sufficient. And she focused then simply on the temporal argument and believed that she was constrained to follow the Seventh Circuit's decisions despite the Wooden case. And that's what she relied on. And, of course, the government in that case, you know, you talk about what kind of evidence they would introduce. They wanted to put in Google Maps for the judge to look at, which she, of course, rejected. Why not? Well, because this is a— We've used Maps. We may have used Maps, but these incidents allegedly occurred 30 years prior, and there's nothing to say that the Schnitzel Bank restaurant's located at the same place today that it was then. I think I ate there 30 years ago. May have. I mean, I think this is the question that's underlying in Wooden. And when we talk about harmless error, I want to just make one other point, and that is that the Rodriguez case collects a number of different harmless error cases. But one thing that's significant in some of these harmless error cases is the Seventh Circuit and other circuits' view that we can look to what the judge would have done, but for the enhancement, because in many of these cases, the judge is saying, I would vary upward and give the defendant 15 years. In this case, our judge specifically said in 2018 and again in 2022 that she thought that this sentence was not fair, that it was unduly harsh, and if the case came back to her for resentencing, it would be a five-year sentence and not a 15-year sentence. So I think that goes to the issue of lack of harmless error here. Thank you, Ms. Cook. Thank you to both parties in this case. And that concludes our arguments for today.